UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                      :

IN RE DPH HOLDINGS CORP.,                   :

                            :

                 Debtor.         :

                            :

----------------------------------------------------------------------:      11 Civ. 8443 (PAE)

                            :

JAMES SUMPTER,                      :      <u>OPINION & ORDER</u>

                            :

                 Appellant,     :

              -v-                :

DPH HOLDINGS CORP.,              :

                            :

                 Appellee.      :

----------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       James Sumpter ("Sumpter") appeals from an order entered by Hon. Robert D. Drain of

the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")

in *In re DPH Holdings Corp. et al.*, No. 05-44481.  The order denied Sumpter's "Amended

Motion for Recoupment On Behalf of Delphi Salaried Retirees" ("Amended Recoupment

Motion").  In that motion, Sumpter sought to recover from DPH Holdings Corp. and certain

affiliated reorganized debtors (collectively, "Reorganized Debtors" or "Appellee") between $68

million and $145 million on behalf of himself and all other Delphi salaried retirees based on a

claim for equitable recoupment.  The scope of Sumpter's appeal, which the Court has construed

to apply only to his own rights and not those of other retirees, is narrow:  he argues that the

Bankruptcy Court erred in denying recoupment claims only to the extent related to "uncollected,

reimbursed, pending or future benefits."  Appellant's Br. 6.  Sumpter also seeks a declaratory

judgment to the effect that he has no future obligations to pay into certain benefit plans.

The Court has reviewed the baroque history of these proceedings, which it summarizes in

this opinion and order, and has carefully considered the parties' submissions to the Bankruptcy

Court and to this Court.  The Court affirms the order of the Bankruptcy Court.

## I.  Background

The underlying facts are set out in detail in the prior orders of the Bankruptcy Court and

this Court.  The Court assumes familiarity with those facts.  *In re DPH Holdings Corp et al.*, No.

05-44481 (Bankr. S.D.N.Y. 2011).  The Court sets out here only the facts most germane to this

appeal.

### A.  Proceedings in Bankruptcy Court

In October 2005, Delphi Corporation, along with certain affiliates, debtors and

reorganized debtors in the adversary case ("Debtors"), filed voluntary petitions in the

Bankruptcy Court for reorganization relief under 11 U.S.C. §§ 101–1330.  At the time of the

filing, the Debtors maintained benefit plans for retirees.  These plans, which related to health,

disability, and life insurance benefits, were commonly referred to as "other post-employment

benefits" ("OPEB") plans.  Whenever an OPEB plan made a third-party payment to a Delphi

employee, it offset the total amount of benefits that the Debtors otherwise would have had to pay

the employee, so as not to give rise to double payment on the same claim.  The effect of the

OPEB plans was, thus, to reduce the amount of benefits that the Debtors were required to pay

directly to Delphi employees.

On February 4, 2009, the Debtors moved in Bankruptcy Court to terminate their duty to

contribute to certain benefit plans for employees, retirees, and their spouses.  *See* Appellee's Br.

Ex 1 (Bankr. Dkt. 14705).  The Debtors asserted that § 1114 of the Bankruptcy Code – which

imposes procedural requirements on debtors seeking to terminate "retiree benefits," or

"payments for retired employees and their spouses and dependents, for medical, surgical, or

hospital care benefits . . . maintained or established in whole or in part by the debtor prior to

filing a petition commencing a case under this title" – did not bar such termination.  Employees

were invited to submit objections to the motion, in writing, to the Bankruptcy Court (*see id.*);

approximately 1,633 objections were filed in opposition to the motion.  *See* Appellee's Br. Ex. 2

(Bankr. Dkt. 16326).  Among the objectors were the Delphi Salaried Retirees' Association

("Retirees' Association"), and Sumpter, individually.  *See* Appellee's Br. Ex. 3 (Bankr. Dkt.

14898).

On February 24, 2009, the Bankruptcy Court held a hearing on the motion.  It held that

Section 1114 does not apply to modification or termination of OPEB plans that have not yet

vested, including the termination proposed by Debtors.  On February 25, 2009, the Bankruptcy

Court issued a Provisional Salaried OPEB Termination Order ("Provisional Termination

Order"), authorizing the Debtors to terminate OPEB plans.  This authorized terminating the

Debtors' contribution to employees' post-retirement health care and life insurance plans, and

their 1% contribution to the Salaried Retirement Savings Plan for certain salaried employees.

*See* Appellee's Br. Ex. 4 (Bankr. Dkt. 16380).  The Provisional Termination Order also directed

the trustee to appoint a committee of retired employees to represent the eligible salaried retirees

for various purposes in proceedings with the Debtors ("Retirees' Committee").  The Retirees'

Committee was to determine whether any retiree or group of retirees had vested benefits; it was

also charged with negotiating with the Debtors over potential mutually beneficial changes to the

Provisional Termination Order.  *See id.* ¶ 9.  The Provisional Termination Order limited the

Retirees' Committee to individuals who had appeared at the February 24 hearing; the trustee thereupon appointed seven people, including Sumpter, to the Retirees' Committee. *See* Appellee's Br. Ex. 5 (Bankr. Dkt. 20617).

On March 11, 2009, the Retirees' Association filed an appeal from the Provisional Termination Order in the District Court. On the same date, the Bankruptcy Court entered its Final OPEB Termination Order ("Final Termination Order"), which authorized significant modification or termination of the OPEB plans. *See* Appellee's Br. Ex. 6 (Bankr. Dkt. 16448). On March 13, 2009, the Retirees' Committee filed an appeal from the Final Termination Order with the District Court.

On March 25, 2009, less than one month after being appointed to the Retirees' Committee, Sumpter resigned. He was not replaced.

On April 2, 2009, the Retirees' Association and the Retiree's Committee together entered into a settlement agreement with the Debtors. That agreement served as the "complete and final resolution of the Retirees' Committee's and the [Retirees'] Association's appeals . . . of the OPEB Termination Orders." *See* Appellee's Br. Ex. 9 (Bankr. Dkt. 16545) ("Settlement Order"). It directed the Debtors to pay $8.75 million to the Retirees' Committee, which included a $1 million "hardship" fund, and $500,000 to create a Voluntary Employees' Beneficiary Association ("VEBA"), which afforded employees benefits that were eligible for certain tax credits. The Debtors also agreed to offer retirees an opportunity to reinstate certain benefits "on a self-pay continuation basis"—thereby "permit[ting] payment deductions from their pension checks"—until June 30, 2009. *Id.* at 2. The Debtors also agreed to direct their group life insurance provider to permit retirees to maintain their then-current level of optional term life insurance without the need to re-qualify. In exchange for these concessions, the Retirees'

Committee and the Retirees' Association agreed to voluntarily dismiss, with prejudice, their respective appeals of the Termination Orders, and to waive all rights to appeal. *Id.* at 2–3.  Other than the $8.75 million settlement amount, the Debtors, with the Bankruptcy Court's authorization, ceased making most OPEB payments.

At the time of the settlement, Sumpter was not a member of the Retirees' Committee.  In a later submission, Sumpter represented to the Bankruptcy Court that he had been "a proponent of not taking the . . . settlement because retirees could achieve a better outcome by purs[u]ing lifetime COBRA benefits."  *See* Request for Stay of Court Order 5–6 (Bankr. Dkt. 21308).

On June 16, 2009, the Bankruptcy Court issued an order approving modifications to the Debtors' first amended plan of reorganization.  *See* Appellee's Br. Ex. 10 (Bankr. Dkt. 17032).  That order set a July 15, 2009 deadline for (1) administrative expense claims related to the period between the October 2005 commencement of the bankruptcy case and June 1, 2009, and (2) objections to confirmation of the modified reorganization plan.  The order also set a final hearing for July 23, 2009, to consider any modifications to the reorganization plan (the "Final Modification Hearing").[1]

On July 14, 2009, Sumpter filed several administrative expense claims.  Claim number 18620 requested a pay-out on a life insurance policy valued at $97,788.00.  Claim number 18621 requested lifetime COBRA payments valued at $62,524.08.

On July 17, 2009, Sumpter filed a motion styled as an "Expedited Motion To Enforce COBRA Benefits for Salaried Retirees and Motion for COBRA Settlement."  *See* Appellee's Br.

---

[1] It is undisputed that Sumpter was timely served with the Final Modification Hearing Notice, the Administrative Claim Bar Notice, and an Administrative Expense Claim Form.  *See* Aff. of Service Ex. U at 3928 (Bankr. Dkt. 17267).

Ex. 13 (Bankr. Dkt. 18366) ("COBRA Benefit Motion").  That motion asked the Bankruptcy

Court to direct the Debtors to provide retirees with lifetime eligibility for COBRA benefits.

On July 30, 2009, the Bankruptcy Court approved the Debtors' reorganization plan, as

modified ("Reorganization Plan").  *See* Bankr. Dkt. 12359 ("Plan Modification Order").  Article

XI of that Order detailed the plan's effect on claims against the bankruptcy estate.  Relevant

here, Article 11.14 provides that "Article XI shall act as an injunction against any Person

commencing or continuing any action, employment of process, or act to collect, offset, or

recover any Claim, Interest, or Cause of Action satisfied, release, or discharged under this Plan

to the fullest extent authorized or provided by the Bankruptcy code."  *Id.* at Ex. A, art. 11.14.

The order also provides:

> [T]he debtors and all Persons shall be precluded and permanently enjoined on and
> after the Effective Date from (a) commencing or continuing in any manner any
> Claim, action, employment of process, or other proceeding of any kind with
> respect to any Claim . . . against the Reorganized Debtors, which they possessed
> or may possess prior to the Effective Date, (b) the enforcement, attachment,
> collection, offset, recoupment, or recovery by any manner or means of any
> judgment, award, decree, order, or otherwise with respect to any Claim interest . .
> . against the Reorganized Debtors, which they possessed or may possess prior to
> the Effective Date, . . . and (d) asserting any Claims, Interests, or Causes of
> Action that are satisfied, discharged, released, or subject to exculpation hereby or
> by the modified Plan.

*Id.* ¶ 22.  On October 6, 2009, the Reorganization Plan became effective.

On August 3, 2009, the Bankruptcy Court denied Sumpter's COBRA Benefit Motion.  It

found that motion moot in light of the OPEB discharge as reflected in the Plan Modification

Order.  *See* Appellee's Br. Ex. 14 (Bankr. Dkt. 18723).  On December 2, 2009, the Bankruptcy

Court disallowed and expunged Sumpter's administrative claims.  *See* Appellee's Br Ex. 12, Ex.

I at 10 (Bankr. Dkt. 19135).

### B.  Sumpter's June 2011 COBRA Motion

On May 5, 2011, the Retirees' Committee filed a motion asking the Bankruptcy Court to designate the VEBA created in 2009 for Delphi retirees as "in lieu of" lifetime COBRA eligibility.  *See* Motion to Designate Benefit of DSRA VEBA as in Lieu of COBRA Coverage (Bankr. Dkt. 21261).  After the passage of the American Recovery and Reinvestment Act, the benefits offered by a tax-exempt VEBA set up by a bankruptcy court were eligible for a Health Coverage Tax Credit ("HCTC") subsidy.  *See* 26 U.S.C. § 35(e)(1)(K).  That subsidy, amounting to 65% of the benefit costs, was a meaningful benefit to Delphi retirees whose pensions had been terminated.  The impetus for the Retirees' Committee's 2011 motion was to "reduce the risk, because of possible legislative uncertainty, that the benefit provided by the DSRA VEBA to thousands of Delphi retirees and their dependants may lose eligibility for the [HCTC] subsidy after February 13, 2012."  The Retirees' Committee asserted that, were the VEBA designated as "in lieu of" the lifetime COBRA eligibility given up during the 2009 settlement negotiations, the VEBA could obtain a favorable ruling from the IRS, which would allow it to continue to provide HCTC-eligible subsidized benefits.

On June 6, 2011, the Bankruptcy Court granted the Retirees' Committee's motion, with some clarifying language.  It held that:  "The benefits offered by the DSRA VEBA are designated as in lieu of lifetime COBRA continuation coverage benefits for retirees and their dependants who are represented by the Retirees' Committee and were not offered lifetime COBRA continuation coverage in connection with the change to their benefits during these Chapter 11 cases."  Appellee's Br. Ex. 15 at 3 (Bankr. Dkt. 21306).

On June 13, 2011, Sumpter filed a motion requesting a stay of the Bankruptcy Court's June 6, 2011 order.  *See* Request for Stay of Court Order (Bankr. Dkt. 21308).  Appearing *pro se*

for the first time in this action, Sumpter argued that he had not been furnished proper notice of the May 5 motion.  He explained that a stay would permit him to request a rehearing on the motion.  On the merits, Sumpter claimed that the Bankruptcy Court's June 6, 2011 order would irreparably injure the retirees, because it would "cause forever the retirees to lo[]se the option to pursue life time COBRA."  He also claimed that, during his tenure on the Retirees' Committee, there had been no "discussion or proposal that the VEBA would be in lieu of COBRA."  *Id.* at 5. Sumpter argued that he was entitled to notice of the Retirees' Committee's motion, because "[i]t is well known that Movant [Sumpter] has been the face of the Salaried Retirees efforts to secure life time COBRA benefits," and because "all of the parties involved knew of, or should have known that the Movant [Sumpter] has been actively continuing efforts to secure, for the retirees and the VEBA, the COBRA benefit worth more than $500,000,000."  *Id.* at 2, 4.

The Reorganized Debtors (Bankr. Dkt. 21400), the Retirees' Committee (Bankr. Dkt. 21402), and the VEBA Committee for the Retirees' Association (Bankr. Dkt. 21404), all objected to Sumpter's motion to stay the Bankruptcy Court order.  On June 23, 2011, a hearing was held on the motion; Sumpter was not present.  On June 27, 2011, the Bankruptcy Court denied Sumpter's request that it stay its June 6 order.  *See* Appellee's Br. Ex. 16 (Bankr. Dkt. 21415).

### C.  Sumpter's Amended Recoupment Motion

On August 22, 2011, Sumpter, acting *pro se*, filed a motion, styled as a claim under the doctrine of equitable recoupment, on behalf of the Delphi retirees.  *See* Motion for Recoupment on Behalf of Delphi Salaried Retirees (Bankr. Dkt. 21534).  On September 8, 2011, after the Reorganized Debtors asked the Bankruptcy Court to dismiss the motion, *see* Bankr. Dkt. 21551, Sumpter filed an amended motion.  *See* Amended Motion for Recoupment on Behalf of Delphi

Salaried Retirees (Bankr. Dkt. 21566) ("Amended Recoupment Motion").  Sumpter's motion, filed on behalf both of himself individually and all Delphi retirees, claimed that the retirees were entitled to repayment of prior offsets received by the Reorganized Debtors in connection with social security, health care, and worker's compensation benefit plans.  (Under the Reorganization Plan, which had authorized the Reorganized Debtors to decrease or terminate OPEB plans, benefits received by salaried retirees in connection with such plans were subject to offsets.) Sumpter claimed that because of the loss of OPEB benefits and the increased cost of health care premiums, the remaining OPEB benefits that retirees did receive came at a higher cost than anticipated.  He also claimed that (1) the Reorganized Debtors were not entitled to the offsets set out in the Modified Reorganization Plan, (2) prior offsets constituted overpayment to the Reorganized Debtors and thus should be returned to the retirees, and (3) any future offsets should be cancelled so that the benefits received by retirees would not be reduced.  Sumpter estimated that recoupment for Social Security benefits alone equaled between $68 million and $145 million.  *See id.* at 16.

On September 22, 2011, the Bankruptcy Court held a hearing on Sumpter's Amended Recoupment Motion.  The Bankruptcy Court observed that Sumpter was not authorized to act on behalf of the other Delphi retirees; it construed his motion as on Sumpter's behalf only.  Judge Drain stated:

> Although the motion is styled as on behalf of Delphi salaried retirees and not just on behalf of Mr. Sumpter, he acknowledges in his reply to the debtors' objection to the motion, "The Movant does not claim to represent or serve as an attorney for other salaried retirees."  And so, I am treating this motion as a motion solely on behalf of Mr. Sumpter and not on behalf of anyone else who, as Mr. Sumpter acknowledges, have not authorized him to make the motion on their behalf.

*See* Hearing Tr. 14:12–19, Ex. 19 of Appellee's Br. (Bankr. Dkt. 21603).

9

At the hearing, a disagreement arose as to the facts relating to the current payment of disability benefits.  Sumpter disputed the Reorganized Debtors' claim that Delphi had terminated all disability benefits when it terminated the OPEB plans; he stated that although Delphi had terminated various health care plans, it had not terminated disability benefits.  *See* Hearing Tr. 11:7–12:20; Appellant's Br. 8.  The Reorganized Debtors countered that they were not, in fact, paying Sumpter or other salaried retirees disability benefits.  Rather, they represented, such payments were made by a VEBA trust fund pursuant to the 2009 settlement between the Debtors and the Retirees' Committee.  Thus, the Reorganized Debtors asserted, there were no payments against which Sumpter could even state a claim for recoupment.  The Bankruptcy Court accepted the Reorganized Debtors' account of the facts.

At the hearing, the Bankruptcy Court held that because the July 30, 2009 Plan Modification Order had incorporated the discharge in Debtor's OPEB obligations, and because paragraph 22 of that Order permanently enjoined "recoupment or recovery by any matter or means of judgment," the Plan Modification Order is "a final order and under Section 1144 of the Bankruptcy Code cannot be revoked even for fraud."  *See id.* 17:5, 17:10–11.  The Court further held that in light of its Order of August 3, 2009 denying Sumpter's COBRA Benefit Motion, its order of December 2, 2009 denying Sumpter's administrative claims, and its order of June 27, 2011 denying Sumpter's request to stay the Court's order designating the VEBA as in lieu of COBRA, "the record is quite clear that Mr. Sumpter is barred by res judicata . . . from either (a) challenging the Court's order authorizing the debtors to terminate the OPEB plans; (b) the VEBA settlement; and (c) already disallowed administration claims arising from the alleged nonpayment or failure to pay OPEB."  *Id.* 17:24–18:4.  The Bankruptcy Court also denied

Sumpter's motion on the alternative ground that it improperly asserted the recoupment doctrine as an affirmative cause of action, rather than as a defense. *See id.* 20:19–21:22.

In addition, Judge Drain admonished Sumpter from bringing actions not based on a "good faith real argument." *Id.* 23:8. He warned that further motions like the Amended Recoupment Motion, that had "already been dealt with" and that "simply don't make sense," particularly those that violated the Plan Modification Order, would "merit the imposition of sanctions." *Id.* 22:20–23:19.[2]

On September 26, 2011, following the hearing, Sumpter provided the Bankruptcy Court with documents indicating that the Reorganized Debtors were paying into his disability benefits through their third party administrator. *See* Ex. 22 of Appellee's Br. This, he noted, conflicted with statements at the hearing by the Reorganized Debtor to the effect that they were not making benefit payments to Sumpter. After receiving the documentation from Sumpter, the Reorganized Debtors clarified their earlier representations to the Bankruptcy Court. They explained that, although "substantially all" OPEB benefits had been terminated, disability benefits had continued, and were now being paid by a third party claims agent; that agent was being reimbursed by DPH Holdings for the amount of the disability benefit and third party administrative costs. But, the Reorganized Debtors stated, no such charges or deductions applied to Sumpter's disability benefit, and Sumpter was not making any payments to the Reorganized Debtors themselves. *See* Appellee's Br. 10. Therefore, Social Security and other third party payments to Sumpter – and not any credits to the Reorganized Debtor – determined how the total amount of Sumpter's disability benefit was calculated.

---

[2] On account of Sumpter's *pro se* status, Judge Drain did not, however, grant the Reorganized Debtors' request for an order barring Sumpter from further litigation regarding issues previously adjudicated.

While acknowledging the factual error that the Reorganized Debtor had made at the September 22 hearing, the Bankruptcy Court upheld its previous denial of the Amended Recoupment Motion.  On October 13, 2011, the Bankruptcy Court issued an order to this effect. On November 21, 2011, Sumpter appealed the October 13 order to this Court.

## II.  Discussion

After setting out the standard of review, the Court addresses Sumpter's 12 claims in turn.

### A.  The Standard of Review

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a) ("[D]istrict courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges.").  On appeal, the court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."  *Id.*; *see also Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 91 (2d Cir. 2010) ("[f]indings of fact are reviewed for clear error").  A bankruptcy court's legal conclusions are, however, reviewed *de novo.  See In re Kalikow*, 602 F.3d at 91; *In re Quigley Co.,* 449 B.R. 196, 200–01 (S.D.N.Y. 2011) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)).

Under the clear error standard, there is a "'strong presumption in favor of a trial court's findings of fact if supported by substantial evidence,'" and a district court will not overturn factual findings unless it is "'left with the definite and firm conviction that a mistake has been made.'"  *In re Cavalry Const., Inc.*, 428 B.R. 25, 29 (S.D.N.Y. 2010) (quoting *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 1 F.3d 1570, 1579 (2d Cir. 1994)).

### B.  Standing

A threshold question is whether, and to what degree, Sumpter has standing to bring his claims.  "'[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.'"  *In re DBSD North America*, 634 F.3d 79, 89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991) (internal quotation marks omitted)).  The "aggrieved person" standard requires that an appellant show both "injury in fact" under Article III, and that the injury suffered is direct and financial. U.S. CONST. art 3, § 1; *see Kane v. Johns–Manville Corp.*, 843 F.2d 636, 642 & n.2 (2d Cir. 1988).

An appellant must also establish prudential standing, meaning, as relevant here, that he must "assert his own legal rights and interests and not those of third parties."  *Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010).  "Prudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan."  *Id.*  In the context of bankruptcy appeals, district courts "have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights." *In re Johns–Manville*, 843 F.2d at 644.

On appeal, Sumpter purports to assert claims on behalf of himself individually and all other Delphi retirees.  *See* Appellent's Br. 1.  Although Sumpter has standing to raise claims relating to his own pecuniary interests, he cannot assert the rights of other Delphi retirees who have not joined his appeal or authorized him to act on their behalf.  To assert the rights of third parties on such an appeal, a movant must submit a power of attorney evidencing the movant's

authority to act as an agent or attorney in fact for all unnamed parties.  *See* Fed. R. Bankr. P. 9010(c).  Sumpter has not done so as to other Delphi retirees.  He thus has not established prudential standing to assert others' rights on appeal.[3]

Accordingly, this Court will address Sumpter's appeal to the extent his claims relate to his individual interests, but not to the extent they purport to assert rights of other Delphi retirees.

### C.  Sumpter's Claims on Appeal

In appealing the Bankruptcy Court's October 13, 2011 order, Sumpter asks the Court to grant relief under the doctrine of equitable recoupment as to all "benefit reimbursement payments that are required to be made to Delphi" after September 22, 2011.[4]  Appellant's Br. 25. Sumpter also requests an affirmative order eliminating any duty of Delphi retirees to reimburse the Reorganized Debtors for future Social Security, worker's compensation, and health care benefits.  Finally, Sumpter asks that the Court permit discovery in order to identify all affected Delphi retirees, and to determine the appropriate value of the recoupment payments.

In seeking such relief, Sumpter makes what the Court has classified as 12 distinct claims of error.  Although significant portions of his submission are convoluted, overlapping, and

---

[3] In his response to the Debtors' objections to his Amended Motion for Recoupment, Sumpter appears to have conceded that he lacked the authority to assert claims on behalf of other retirees, and that Judge Drain similarly construed that motion as filed on behalf of Sumpter only.  *See* Hearing Tr. 14:15–19, Ex. 19 of Appellee's Br. (Bankr. Dkt. 21603) ("I am treating this motion as a motion solely on behalf of and by Mr. Sumpter and not on behalf of anyone else who, as Mr. Sumpter acknowledges, have not authorized him to make the motion on their behalf.").

[4] Sumpter does not appeal the Bankruptcy Court's order insofar as it denied recoupment of payments made by Delphi retirees to the Reorganized Debtors before September 22, 2011, the date on which the Amended Recoupment Motion was filed.  *See* Appellant's Br. 6.  Indeed, Sumpter concedes that his Amended Recoupment Motion "was flawed" in that it sought such relief, in that "the principle of equitable recoupment does not permit" relief in the form of a refund for prior payment.  *Id.*  Rather, Sumpter states that the recoupment he pursues on appeal is to be "applied only to uncollected, unreimbursed, pending, or future benefits."  *Id.*

appear to assert noncognizable theories of relief or claims of error, the Court has sought to identify and evaluate each claim in turn.

### 1. Appellee's failure to affirmatively allege that the underlying issue is core to the bankruptcy proceedings did not violate Rule 7012.

Sumpter asserts that the Reorganized Debtors violated Rule 7012 by failing to plead, in response to the Amended Recoupment Motion, that his claims are "core" bankruptcy claims. *See* Appellant's Br. 7–8; Fed. R. Bankr. P. 7012(b) (where a responsive pleading asserts "that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge."). Sumpter asserts that, as a result of this violation, the Bankruptcy Court erred in failing to disallow the Reorganized Debtors' response.

In fact, Rule 7012 does not apply to the facts at hand. Rule 7012(b) requires a respondent to allege that an underlying proceeding is non-core only if it intends to dispute, on those grounds, the entry of a final order by the Bankruptcy Court. There is no dispute that the issues underlying Sumpter's claims are core to the bankruptcy proceedings. Because Appellee did not assert that Sumpter's claims were non-core, Rule 7012 does not apply here.

### 2. Appellee's erroneous representation to the Bankruptcy Court that the disability benefits had been terminated was not germane to the Bankruptcy Court's decision and did not cause injury to Sumpter.

Sumpter asserts that the Bankruptcy Court erred when it failed to reconsider its denial of the Amended Recoupment Motion after first Sumpter, and then the Reorganized Debtors, corrected the information it had earlier received regarding the source of retirees' disability benefits. *See* Appellant's Br. 8–9. At the hearing, and at the time that the Bankruptcy Court articulated its justification for denying Sumpter's motion, the Bankruptcy Court was under the erroneous belief that the Plan Modification Order had terminated disability benefits and thus that

15

the Reorganized Debtors did not pay retirees disability benefits.  After the hearing, Sumpter sent

a letter to the Bankruptcy Court providing documentary proof that demonstrated that the

termination of OPEB benefits had not extended to disability benefits, and that the Reorganized

Debtors were contributing to the benefits that Sumpter and other salaried retirees received.  Upon

receiving the letter and the supporting documentation, the Reorganized Debtors contacted the

Bankruptcy Court, and acknowledged that their previous statement was inaccurate.  It was after

the factual record had thus been corrected that the Bankruptcy Court issued its October 13, 2011

order, denying the Amended Recoupment Motion.

  On appeal of a bankruptcy court decision, district courts review findings of fact for clear

error.  *See In re Kalikow*, 602 F.3d at 91.  To disturb findings of fact, the district court must find

that a mistake had been made which materially affected the outcome of the claim.  *See In re

Cavalry Const., Inc.*, 428 B.R. 25, 29 (S.D.N.Y. 2010).  Here, although there was clearly a

factual misrepresentation during the hearing on Sumpter's motion, that error was corrected (by

Sumpter and, eventually, Appellee) within days of the hearing and before a final order issued.

Thus, prior to the final order, the facts as represented by Sumpter were accepted by the parties

and the corrected facts had been made known to the Bankruptcy Court.  Accordingly, the

corrected facts were before the Court when it issued its final order.  Because there was no clear

error extant in the factual record at the time of the final order, and no indication that the earlier

misapprehension as to the facts influenced the Bankruptcy Court's findings of fact, the Court

will not disturb those findings of fact.

  Nor has Sumpter shown or plausibly claimed that the quickly-corrected factual error

influenced the Bankruptcy Court's denial of his motion.  At the September 22, 2011 hearing on

Sumpter's motion, the Bankruptcy Court held, as a matter of law, that two alternative grounds

justified denial: res judicata and the unavailability of the equitable doctrine of recoupment as an affirmative basis for relief.  The Bankruptcy Court also held that even if res judicata did not bar Sumpter's claim, his Amended Recoupment Motion, like his prior motions, merited denial because the Plan Modification Order had discharged the Debtors' OPEB obligations and permanently enjoined "recoupment or recovery by any matter or means of judgment."  Hearing Tr. 17:10–11.  Judge Drain's articulation of each of these grounds for denial of the motion did not rely at all on his erroneous belief at the time that the Reorganized Debtors were not paying Sumpter or other retirees disability benefits.  The fact that the Reorganized Debtors were (through a third party) contributing to retirees' disability benefits does not undermine any of the independent grounds for denial of Sumpter's motion that Judge Drain articulated.

### 3. The Amended Recoupment Motion asserted a claim against the bankruptcy estate that was prohibited by the Bankruptcy Court's prior orders.

Sumpter claims that the Bankruptcy Court erred when it characterized the Amended Recoupment Motion, as it pertained to any uncollected, unreimbursed, or future benefits, as barred by the Bankruptcy Court's previous orders.  *See* Appellant's Br. 10.  Specifically, Sumpter argues that because facts before the Court at the hearing on the motion incorrectly indicated that disability benefits had been terminated, the Bankruptcy Court should not have characterized the motion as a "claim" as it related to any future benefits.

The Court rejects this argument as illogical.  A claim is an assertion of a legally enforceable right, often coupled with a demand for relief.  The state of the factual record before the Bankruptcy Court does not make Sumpter's underlying claim any less a claim.  The fact that one party made a (soon-corrected) factual error on the record does not change the fact that the Sumpter's Amended Recoupment Motion was an attempt to assert a claim for relief.  In any

event, the Bankruptcy Court's labeling of his motion as a "claim" is not an appealable ruling.  It is a discretionary (and entirely appropriate) choice of words.

To the extent that Sumpter may be read to argue that his Amended Recoupment Motion (because not a claim) was not barred by res judicata, the Court rejects such an assertion.  *See also* Section II.C.6, *infra*.  The Bankruptcy Court explained that "a confirmation order that specifically enjoins permanently the assertion of the doctrine of recoupment constitutes res judicata" against a motion for recoupment in the case that (1) the confirmation order was final, and (2) the party against whom the order is asserted for res judicata purposes had sufficient notice of it for due process purposes.  Hearing Tr. 19:12–14, Appellee's Br. Ex. 19 (Bankr. Dkt. 21603).  Here, both prongs of res judicata are satisfied.  First, the Plan Modification Order clearly constitutes a final judgment on the merits.  Second, the parties do not dispute that Sumpter had notice of the previous orders when he filed the Amended Recoupment Motion.  *See* Hearing Tr. 19:15–18.  That Sumpter has narrowed his appeal to cover only credits against future benefits rather than both future benefits and past repayment does not change the fact that earlier orders of the Bankruptcy Court had resolved this exact claim with respect to future benefits.

### 4.   The Amended Recoupment Motion requested a payment rather than a future credit, and this relief was unavailable under equitable recoupment.

Sumpter asserts that to the extent the Amended Recoupment Motion requested relief for future credits against health care benefits, such motion was properly before the Bankruptcy Court.  *See* Appellant's Br. 10–11.  He argues that while the portion of his motion that had sought affirmative recovery of past paid money was properly denied by the Bankruptcy Court, the part seeking credit to future payments was erroneously denied.

The Court disagrees, for the same reasons stated by the Bankruptcy Court.  Although Sumpter has narrowed the scope of the Amended Recoupment Motion on appeal, the portion of

that motion directed at future benefits is barred both by res judicata and by the express discharge

of liability reflected in the Plan Modification Order.  Accordingly, the Court has no occasion to

reach the issue of whether, under other circumstances, the equitable doctrine of recoupment

would provide a cause of action as to "uncollected, unreimbursed, pending or future benefits."

In the present case, such a remedy is, clearly, unavailable.

### 5.   The Amended Recoupment Motion is barred by § 1141.

Sumpter asserts that the Bankruptcy Court erred for a different reason when it denied the

Amended Recoupment Motion with respect to future payments, because it wrongly regarded 11

U.S.C. § 1141 as applicable to a motion seeking a credit for such payments.  *See* Appellant's Br.

11–13.

It is well established that confirmation of a chapter 11 plan discharges all debts which

arose prior to confirmation.  *See* 11 U.S.C. § 1441(d) ("[T]he confirmation plan . . . discharges

the debtor from any debt that arose before the date of such confirmation.").  Discharge of debt is

governed by § 524(a), which provides that "[a] discharge in a case under this title . . . operates as

an injunction against the commencement or continuation of an action, the employment of

process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor,

whether or not discharge of such debt is waived."  11 U.S.C. § 524(a).

The Court rejects Sumpter's argument.  Although Sumpter pursues on appeal only a

portion of his motion below, that portion of his motion (relating to future benefits) is still barred

by section 1141 of the Bankruptcy Code.  The Plan Modification Order, which confirmed the

Reorganization Plan, "precluded and permanently enjoined" any person, including Sumpter,

from "commencing or continuing in any manner any Claim, action, employment of process, or

other proceeding of any kind with respect to any Claim . . . against the Reorganized Debtors" and

from "asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the modified Plan."  Plan Modification Order ¶ 22.  It also explicitly enjoined any person from "the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim interest . . . against the Reorganized Debtors."  *Id.*  Under this unambiguous language, all claims asserted by Sumpter in the Amended Recoupment Motion were discharged.  He was, and is, therefore, properly permanently enjoined from raising such claims.

### 6.  The Amended Recoupment Motion is barred by res judicata.

Sumpter asserts that the Bankruptcy Court erred when it denied the Amended Recoupment Motion on the grounds that it was barred by res judicata.  *See* Appellant's Br. 13–16.  He argues that his claim post-dates earlier orders of the Bankruptcy Court, and constitutes a new claim that is not controlled by the earlier orders.

In fact, Sumpter's claim is barred by res judicata.  "'Under the doctrine of res judicata, or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)).  Res judicata bars the filing of a subsequent claim if the "earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *EDP Med. Computer Sys.*, 480 F.3d at 624 (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

The earlier decisions of the Bankruptcy Court satisfy each of these conditions.  First, the Plan Modification Order was a final judgment on the merits. *See* Hearing Tr. 17:5, 10–11 (because the Plan Modification Order permanently enjoins "recoupment or recovery by any matter or means of judgment," it is "a final order and under Section 1144 of the Bankruptcy Code cannot be revoked even for fraud.").  Second, the issue of OPEB benefits termination was fully and fairly litigated before the Bankruptcy Court.  The Provision Order and then the Final Order authorized the Debtors to terminate OPEB to salaried retirees only after extensive hearings and consideration of scores of objections.  Third, the Amended Recoupment Motion involves precisely the same parties as the Plan Modification Order, the order of August 3, 2009 denying Sumpter's COBRA Benefit Motion, and the order of June 27, 2011 denying Sumpter's request to stay the Court's order designating the VEBA as in lieu of COBRA.  Fourth, the Amended Recoupment Motion arises from modifications in OPEB plan coverage that were authorized by order of the Bankruptcy Court, first in the Settlement Order, and then in the Plan Modification Order, which codified the terms of the settlement.

### 7.   The Bankruptcy Court's reliance on *Daewoo International (America) Corp. Creditor Trust v. SSTS America Corp. et al.* was proper.

Sumpter asserts that the Bankruptcy Court erred by relying on *Daewoo International (America) Corp. Creditor Trust v. SSTS America Corp. et al.*, No. 09-cv-9629, 2003 WL 21355214 (S.D.N.Y. June 11, 2003).  *See* Appellant's Br. 16–17.  Sumpter argues that *Daewoo* is incorrect insofar as it bars post-confirmation setoffs, because it, purportedly, fails to appreciate the fact that the definition of "claim" in § 553 affects requirements found in § 1141.

The Court rejects Sumpter's attempt to distinguish *Daewoo*.  The language of the confirmation plan at issue in *Daewoo* was substantially similar to the relevant section of the Plan Modification Order.  *See Daewoo International*, 2003 WL 21355214, at *5 (citing the plan's

express prohibition against "the assertion of any right of setoff, subrogation or *recoupment* of any kind against any obligation due from [the debtor or trust]").  The *Daewoo* Court held that "because SSTS was provided with sufficient notice to object to the plan's prohibition on recoupment and because it did not do so in a timely fashion before the Bankruptcy Court, we will not allow it to do so now."  Similarly, because the Plan Modification Order here barred future assertions of rights against the Debtors that vested prior to the confirmation plan, Sumpter is barred from bringing such a claim.

> **8.   Appellant lacks prudential standing to assert the rights of other Delphi retirees.**

Sumpter asserts that the Bankruptcy Court erred in construing the Amended Recoupment Motion as asserting claims on behalf of Sumpter only, and not on behalf of the universe of Delphi retirees.  *See* Appellant's Br. 17–19.  Sumpter argues on appeal that he has standing to assert the rights of the other retirees because: (1) the Bankruptcy Court has in the past authorized other entities to represent the interests of the Delphi retirees, including the Retirees' Committee; (2) the Bankruptcy Court did not deny Sumpter's earlier motions on the grounds that he lacked authority to represent the Delphi retirees; (3) res judicata prevents the Reorganized Debtors from asserting this defense against the Amended Recoupment Motion because it failed to assert it as a defense to Sumpter's earlier motions.  Sumpter also argues that allowing him to represent the interests of the universe of Delphi retirees advances judicial economy.

As noted, to establish prudential standing, an appellant must "assert his own legal rights and interests and not those of third parties."  *Freeman*, 452 B.R. at 371.  Although Sumpter has standing to raise claims arising out of his own pecuniary interests, he cannot assert the rights of other Delphi retirees who have not authorized him to act on their behalf.  *See* Section II.B, *supra*. The fact that the Court authorized the trustee to appoint members to a Retirees' Committee to

serve an expressly-defined purpose in settlement negotiations with the Debtors has little if any bearing on Sumper's authority to assert a claim on behalf of the salaried retirees.  Sumpter is himself a salaried retiree, but has no authorization whatsoever, formal or otherwise, to represent anyone but himself.  Sumpter, in fact, has previously conceded before the Bankruptcy Court that he lacks the authority to assert claims on behalf of the other retirees.  *See* Hearing Tr. 14:15–19. Even if judicial economy did counsel in favor of allowing an individual or group of individuals to represent the interests of the universe of Delphi salaried retirees, there is no basis for the Court to honor Sumpter's self-selection as their representative.  Sumpter thus lacks prudential standing to assert their rights on appeal.

### 9.   Appellant is improperly asserting the doctrine of recoupment as an affirmative claim.

Sumpter asserts that the Bankruptcy Court erred when it denied the Amended Recoupment Motion on the grounds that the equitable doctrine of recoupment does not afford litigants an affirmative cause of action.  *See* Appellant's Br. 19–20.  Sumpter argues that because he established that Delphi's successor DPH Holdings continues to make disability payments to Delphi retirees, he was actually asserting his recoupment claim as a defensive right, not an affirmative cause of action.

"'Recoupment is in the nature of a defense, the purpose of which is to do justice viewing one transaction as a whole.'"  *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002) (quoting *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski),* 156 F.3d 131, 133 (2d Cir. 1998) (internal citation omitted)).  Recoupment in bankruptcy often serves the purpose of "avoid[ing] the unjust result that would occur if a debtor [in bankruptcy] who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received."  *N.Y. State Elec. & Gas Co.*

*v. McMahon (In re McMahon),* 129 F.3d 93, 96 (2d Cir. 1997).  Accordingly, "recoupment is purely defensive, or in the nature of a common law defense, and not a separate cause of action or weapon of offense."  *In re Drexel Burnham Lambert Grp., Inc.*, 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990).

Sumpter's motion and appeal is based on a misapplication of the doctrine of recoupment. Sumpter characterizes his recoupment claim as defensive, seeking to block a wrong committed against him by the Reorganized Debtors.  But in fact, Sumpter has not invoked that doctrine defensively, *e.g.*, in the context of defending a claim against him for money owed.  Rather, he has noted that, pursuant to the reorganization of Delphi, the salaried retirees, including Sumpter, experienced a decrease in the benefits they received; that decrease was authorized in the Plan Modification Order.  He is seeking to assert recoupment as an affirmative claim for credit against what he alleges are future payments that he will be compelled to pay to the Reorganized Debtors.[5]  Because recoupment does not provide a cause of action, and thus cannot be asserted as a basis to obtain a declaratory judgment as to his (or others') rights to monetary relief, Sumpter's recoupment motion fails to state a cognizable claim.

### 10. Despite the fact that the recoupment claim seeks reimbursement only of future payment, recoupment relief is still not available to Appellant.

Sumpter asserts that the Bankruptcy Court erred when it denied the Amended Recoupment Motion while under the erroneous belief that that the Reorganized Debtors were no longer making disability payments to Delphi retirees.  *See* Appellant's Br. 21–22.  Sumpter argues that the recoupment claim was appropriate, because it sought credits against future reimbursement payments from Delphi retirees to the Reorganized Debtors.

---

[5] The Court notes that the Appellee disputes Sumpter's characterization of the facts, and contends that Sumpter does not in fact make any payments to Reorganized Debtors for his disability plan.  *See* Appellee's Br. 23.  The Court need not reach this issue of fact here.

Although phrased somewhat differently, this claim is substantively akin if not identical to Sumpter's fourth claim, addressed above, in which Sumpter asserts that the recoupment claim was properly before the Bankruptcy Court insofar as it requested relief for future credits against health care benefits.  The Court rejects this argument for the reasons stated in Section II.C.4.

### 11. The Bankruptcy Court did not err in holding that Appellant improperly asserted recoupment as an affirmative defense

Sumpter asserts that the Bankruptcy Court erred when it denied the Amended Recoupment Motion on the grounds that the equitable doctrine of recoupment does not afford an affirmative cause of action.  *See* Appellant's Br. 22–23.  Sumpter argues that he was appropriately taking affirmative action in anticipation of future litigation by the Reorganized Debtors against nonpaying retirees.

This claim is akin if not identical to Sumpter's ninth claim, in which Sumpter asserts that he properly asserted the doctrine of recoupment as an assertive claim to seek credits against future payments.  The Court rejects this argument for the reasons stated in Section II.C.9.

### 12. Unjust enrichment

Sumpter, finally, asserts that as a result of the alleged deductions that the Reorganized Debtors make from retiree disability plans, they have obtained and continue to obtain unjust enrichment, at the expense of the disabled retirees, in the amount of approximately $300,000 per month since OPEB benefits were terminated.  *See* Appellant's Br. 23–24, app. A.  Appellee denies that any unjust enrichment has occurred.

The Court rejects Appellant's unjust enrichment claim.  Because Sumpter did not raise this claim in the underlying Bankruptcy Court proceedings, he has not preserved the right to make such a claim before this Court on appeal.  To preserve an issue for appellate review by the district court, the issue must be raised sufficiently below such that the bankruptcy court can rule

on the issue.  *See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601 (2d

Cir. 1999); *see also Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*,

54 F.3d 69, 72–73 (2d Cir. 1995) (declining to consider appellant's argument that was not raised

in district court absent a showing of manifest injustice or extraordinary need).  Although it is in

this Court's discretion whether to review issues raised for the first time on appeal that present

only a question of law that requires no additional findings of fact, *see Lanham v. Mansfield*, 400

F. App'x 609 (2d Cir. 2010), unjust enrichment is not such a claim.  Rather, considerable

findings of fact would be necessary to merit a finding of unjust enrichment at the expense of the

Appellant.  Accordingly, by failing to raise the issue before the bankruptcy court, Appellant has

waived his right to raise it on appeal.

      In any event, even if the Court could reach the unjust enrichment claim, it would fail on

the merits.  Although the Debtors' estates do realize savings under the Settlement Order, which

authorized the Debtors to reduce or terminate OPEB benefits—a fact which the Appellee

concedes—the mere realization of a benefit by a bankruptcy estate does not satisfy the standard

for unjust enrichment.  In fact, the express purpose of the creation of the Retirees' Committee

was to explore mutually beneficial alternatives to the Provisional Order.  *See* Appellee's Br. Ex.

4, at 3–4 (Bankr. Dkt. 16380) ("The Court limits the scope of authority of the Retirees'

Committee to . . . consider any modifications of this Order that are mutually agreeable to the

Debtors and the Retirees' Committee").  The Settlement Order expressly adopted modifications

that created mutual benefit; the Retirees' Committee extracted a concession in the form of the

$8.75 million payment to the Retirees' Committee, including the hardship fund and the VEBA;

and in turn the Retirees' Committee waived the right to appeal any order authorizing the Debtors

to reduce or terminate unvested OPEB plans.  Far from constituting unjust enrichment, the

savings realized by the Debtors' estates was contemplated by the Bankruptcy Court, and Sumpter has failed to show the Court's approval of the plan embodying those savings was, in any way, deficient.

## CONCLUSION

For the reasons stated above, Sumpter's appeal from the Bankruptcy Court order denying his Amended Recoupment Motion, *In re DPH Holdings Corp. et al.*, No. 05-44481 (Bankr. Dkt. 21566) is denied and the order of the Bankruptcy Court is affirmed. The Clerk of Court is directed to close this case.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: February 22, 2012
     New York, New York